4 U.S. 446 (____)
4 Dall. 446
Dutilh
versus
Gatliff.
Supreme Court of United States.

*447 J. Ingersoll, for the plaintiff.
W. Lewis, for the defendant."
After argument, the chief justice delivered the unanimous opinion of the Court.
TILGHMAN, Chief Justice.
On the case stated, the question submitted to the Court is, whether the plaintiff is entitled to recover for a total loss?
In resolving this question, I shall divide it into two points.
1st. Did there ever exist a total loss?
2d. Supposing that there once existed a total loss, has any circumstance occurred, which excludes the plaintiff from recovering for more than a partial loss?
1st. The case before us, includes one of the risks expressly mentioned in the policy, a taking at sea. But it has been objected, that this taking was not by an enemy; and that when a belligerent takes a neutral, it is to be presumed that the taking is only for the purpose of searching for the property of his enemy, or goods contraband of war; and that, in the end, justice will be done to the *448 neutral. To a certain extent, there is weight in this distinction; but it must not be carried too far. At the time when the capture in question was made, the United States acknowledged the right of the British to detain their vessels, for the purpose of a reasonable search. The bare taking of the vessel, therefore, could by no means constitute a loss; and if under suspicious circumstances, she should be carried into port, to afford an opportunity for a complete investigation, perhaps, even that ought not of itself to be considered as a total loss. On this, however, I give no opinion. But when the captor, having carried the vessel into port, and completed the examination of the cargo and papers, instead of discharging her, proceeds to libel her as prize, I think the loss is complete. The property is no longer subject to the command of the owner, and it is unreasonable that he should wait the event of judicial proceedings, which may continue for years The case of an embargo is less strong; because, there the confiscation of the property is not intended, and a temporary interruption of the voyage is all that, in general, is to be apprehended. Yet the assured is not obliged to wait the result, but may abandon immediately on receipt of intelligence of the embargo. Not many judicial decisions have been produced on the point in question. Where principles are strong, it is sufficient that there have been no decisions to the contrary. It appears, however, that in the state of New-York, the precise point has been determined. In the case of Mumford v. Church, decided in the Supreme Court of New-York, July term, 1799, the assured recovered for a total loss, where there was a capture, carrying into port, and libelling by a British captor, although after the abandonment the property was restored. It is necessary that some general rule should be established, some line drawn, by which the assured may know at what time he has a right to abandon. In most cases, the voyage is extremely injured by proceedings in the Court of Admiralty, and the event is doubtful. For it cannot be denied, that of late years, such extraordinary occurrences have taken place in war and politics, as have very much affected the principles and practice of foreign Courts of Admiralty. Whatever may be said of the law of nature and nations, and the immutable principles of justice, we see very plainly that the Courts obey the will of the sovereign power of their country; and this will fluctuates with the circumstances of the times. I am, therefore, of opinion, that both by the words and spirit of a policy of insurance, the assured may abandon, when he receives intelligence of the libelling of his vessel.
2d. This brings me to the consideration of the second point: Has any circumstance occurred, which limits the plaintiff to a recovery for only a partial loss?
It is contended, that such an event has occurred: that the vessel was acquitted by the decree of the Court of Admiralty; that after acquittal, she proceeded on her voyage, and that one of the *449 owners was on the spot, and knew of the acquittal. I do not think there is much weight in the circumstance of one of the owners being on the spot; because the general agent of all the owners was in Philadelphia. This general agent effected the insurance, and conducted all the business with the underwriters, and the owner, who was in New-Providence, gave him intelligence of what occurred from time to time, and by no means intended, from any thing that appears, to restrain him from making an abandonment. It is true, that the vessel proceeded on her voyage after she was restored: but it is not stated, nor can the court presume, that any of the owners acted in a manner inconsistent with the abandonment made by their agent. It was proper, at all events, to pursue the voyage for the benefit of whoever might be interested in it. This is the usual practice, and a practice authorized by the policy, and very much for the advantage of the underwriters.
The only difficulty in the case before the Court, arises from this circumstance; that before the action was brought, the vessel was restored, and even at the time of the abandonment, there was a decree of acquittal, although restitution does not appear to have been actually made till some days after. The counsel for the defendant have relied much on the opinion of Lord Mansfield in the case of Hamilton v. Mendez, to establish this principle, that a policy of insurance, being in its nature a contract of indemnity, the plaintiff can recover no more than the amount of his actual loss at the commencement of the action. There is no doubt of the soundness of the principle: I mean that a policy is a contract of indemnity. The only question is, at what period the rights of the parties are to be tested by this principle; whether at the time of abandonment, or of the commencement of the action. I have considered attentively the case of Hamilton v. Mendez. It must be obvious to every one, that the decision in that case was perfectly right. It was simply this; that a man shall not be permitted to abandon, and recover for a total loss, when he knew, at the time of his offer to abandon, that his property, which had been lost, was restored, and the voyage very little injured. But in reading the opinion of Lord Mansfield, we find a want of accuracy, with which that great man was seldom chargeable. Sometimes it appears as if he thought the period, for fixing the rights of the insurers and insured, was the commencement of the suit; sometimes the time of abandonment; and sometimes he even seems to extend his ideas so far as the time of the verdict. But, finally, he explicitly declares, that he decides nothing but the point before him. He seems to have felt a little sore, at the improper application of some general expressions used by him, in the case of Goss v. Withers. Anxious to cut off all pretence for doing the same in Hamilton v. Mendez, he has taken too much pains to avoid the possibility of misrepresentation. Hence his argument, considered in the detail, is not altogether clear and consistent. Upon the whole of this case of Hamilton v. Mendez, I think it most safe to confine its authority to the point *450 actually decided, which was very different from that we are now considering. Some period must be fixed for determining the right of the parties. To limit it to the time of commencing the action would be of little service to the insurers; for the law being once so established, an action would be brought in every instance on the first default of payment. The time of abandonment seems the most natural and convenient period; because the assured must make his election to abandon or not, in a reasonable and short time after he hears of the loss, and the property, being transferred by the abandonment, can never after be reclaimed by the assured. Want of mutuality is want of justice. There is no reason why the assured should be bound, but the assurer left free, to take advantage of events subsequent to the abandonment.
It has been contended by the plaintiff's counsel, that the right to abandon would not have been affected, even if the property had been restored at the time of abandonment, because the restitution was unknown to the plaintiff. As to this, I give no opinion. It is unnecessary; because it is stated that the vessel remained in the custody of the captors at the time of abandonment. The defendant's counsel have urged, that this was the fault of the captain, or of one of the owners, who was at New-Providence; because, after a decree of acquittal, a writ of restitution might have been sued out. But it not being stated, that there was any fault or negligence in the captain or owner, I do not think that the Court can infer it. It being stated that the vessel remained in the custody of the captors, we must presume that the custody was legal. Whether for the purpose of giving the captors an opportunity of entering an appeal, or for what other purpose it was that the restitution was delayed, we are at a loss to determine. But, as restitution was not actually made, and as the plaintiff was ignorant, even of the decree of acquittal, his right to abandon remained unimpaired.
Upon the whole, we are of opinion, that the plaintiff is entitled to recover for a total loss.
Judgment for the plaintiff.[(1)]
NOTES
[(1)] Since the decision of this case, the case of Rhinelander v. The Insurance Company of Pennsylvania, was argued in the Supreme Court of the United States, at Washington, in February term 1807, upon a writ of error from the Circuit Court of the Pennsylvania district; and that Court (consisting of MARSHALL, Chief Justice, CHASE, JOHNSTONE, and LIVINGSTONE, Justices) were of opinion, that in the case of neutral, as well as of belligerent, property, the assured has a right to abandon, and to claim for a total loss, as soon as the vessel is arrested, taken possession of, and carried out of the course of her voyage.